**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

LESTER RAY TOLIVER,                    )
                                       )
     Plaintiff,                      )
                                       )
v.                                     )
                                       )    No. 2:20-cv-2956-JTF-atc
RN HICKEY, ET AL.,                     )
                                       )
     Defendants.                     )

**ORDER MODIFYING THE DOCKET;
DISMISSING COMPLAINT WITHOUT PREJUDICE (ECF NO. 1);
GRANTING LEAVE TO AMEND;
AND DIRECTING PLAINTIFF TO PROVIDE HIS CURRENT ADDRESS**

Before the Court is the *pro se* complaint filed under 42 U.S.C. § 1983 on December 31, 2020 by Plaintiff Lester Ray Toliver.[1]  (ECF No. 1.)  On March 26, 2021, the Court granted leave to proceed *in forma pauperis*.  (ECF No. 4.)

Toliver alleges that the Defendants violated his rights under the First Amendment, Fourth Amendment, Eighth Amendment, and Fourteenth Amendment, as well as his due process and equal protection rights, during his confinement at the WTDF in October 2020 through December 2020.  (ECF No. 1 at PageID 2; ECF No. 1-2 at PageID 12-35.)

---

[1]   When Toliver filed his § 1983 complaint, he was confined at the West Tennessee Detention Facility (the "WTDF") in Mason, Tennessee.  (ECF No. 1 at PageID 2; ECF No. 1-3 at PageID 36.)  On July 22, 2021, Toliver notified the Court that he had been transferred from the WTDF to the Tallahatchie Correctional Facility in Tutwiler, Mississippi.  (ECF No. 5.)  On September 20, 2021, Toliver notified the Court of his change of address to a private residence in Memphis, Tennessee.  (ECF No. 6.)  According to information on the Tennessee Department of Correction's Felony Offender Information website as of the date of this Order, Toliver is presently confined at the Shelby County Criminal Justice Center (the "SCCJC") in Memphis Tennessee.  (*See* https://foil.app.tn.gov/foil/details.jsp (Toliver's twenty-five (25) year sentence for aggravated rape was imposed on October 29, 2021).)

Toliver asserts claims of: (1) false disciplinary report (ECF No. 1-1 at PageID 4-7); (2) retaliation for filing a grievance (*id*.); (3) deprivation of equal protection (*id*. at PageID 4, 6, 8 & 9); (4) failure to train (*id*. at PageID 6); (5) unconstitutional segregation (*id*. at PageID 5, 8 & 9); (6) unconstitutional conditions of confinement (*id*. at PageID 5 & 7); (7) improper housing classification (*id*. at PageID 7-10); (8) inadequate prison grievance process (*id*. at PageID 11); and (9) failure to investigate (*id*. at PageID 7).

Toliver sues: (1) RN Hickey, a nurse at the WTDF; (2) Captain Trafon of the WTDF; (3) Dr. Mardis of the WTDF; (4) J.C. Anderson, a case manager at the WTDF; and (5) Correctional Officer Thomas of the WTDF (collectively, the "Individual Defendants"). (ECF No. 1 at PageID 1-2.)

Toliver seeks: (1) compensatory damages; (2) mental suffering damages; (3) nominal damages; and (4) punitive damages. (*Id*. at PageID 3.) He does not specify damage amounts.

The Clerk shall modify the docket to add as Defendants: (1) the West Tennessee Detention Facility; and (2) CoreCivic.

For the reasons explained below, the complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** in its entirety, and leave to amend is **GRANTED**.

## I.     LEGAL STANDARD

The Court must screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint —

> (1) is frivolous, malicious, or fails to state a claim upon which relief
> may be granted; or
> (2) seeks monetary relief from a defendant who is immune from
> such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether a complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).   *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).   Under those standards, the Court accepts a complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief."   *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).   The Court does not assume that conclusory allegations are true, because they are not "factual," and all legal conclusions in a complaint "must be supported by factual allegations."   *Iqbal*, 556 U.S. at 679.   In addition, Federal Rule of Civil Procedure 8 provides guidance on this issue.   Even though Rule 8 only requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief."   *Twombly*, 550 U.S. at 555 n.3.

Courts screening cases will accord slightly more deference to *pro se* complaints than to those drafted by lawyers.   "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed."   *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).   That said, p*ro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure.   *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

## II.   REQUIREMENTS TO STATE A CLAIM UNDER 42 U.S.C. § 1983

Toliver sues under 42 U.S.C. § 1983.   To state a claim under that statute, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the

United States, and (2) that a defendant caused harm while acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). For his claims to succeed, Toliver must satisfy these requirements.

## III. ANALYSIS

### A. Official Capacity Claims Against The Individual Defendants; And Claims Against The WTDF And CoreCivic

Toliver does not specify whether he sues the Individual Defendants in their official or individual capacities. The Sixth Circuit requires a plaintiff to "set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials." *Wells*, 891 F.2d at 592. "Absent a specification of capacity, it is presumed that a state official is sued in his official capacity." *Northcott v. Plunkett*, 42 F. App'x 795, 796 (6th Cir. 2002) (citing *Wells*, 891 F.2d at 593). The official capacity claims against the Individual Defendants in Toliver's complaint are treated as claims against the Individual Defendants' employer — the WTDF. *See Jones v. Union Cnty., Tennessee*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)). Because a jail is not a "person" subject to suit under § 1983, *see Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000), the Court construes Toliver's claims against the WTDF as claims against CoreCivic (formerly known as Corrections Corporation of America), which is the private corporation that operated the WTDF at the time in question. *See Badger v. Chapman*, No. 2:16-cv-2886, 2019 WL 1997480, at *1 (W.D. Tenn. May 6, 2019); https://www.corecivic.com/about; https://www.corecivic.com/news/corrections-corporation-of-america-rebrands-as-corecivic.)

"A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit

has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18. CoreCivic "cannot be held liable under a theory of *respondeat superior.*" *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). To prevail on a § 1983 claim against CoreCivic, Toliver "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of Toliver's rights. *Id.*

The complaint does not allege that the Individual Defendants' actions were taken pursuant to a policy or custom of CoreCivic that was "the moving force" behind any violation of Toliver's constitutional rights. (*See* ECF No. 1 at PageID 2; ECF No. 1-1 at PageID 4-11.)

For these reasons, Toliver does not state a claim to relief against (1) the Individual Defendants in their official capacities, (2) the WTDF, or (3) CoreCivic. All such claims are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim to relief.

Even if the Court liberally considers the complaint's allegations as claims against the Individual Defendants in their individual capacities, Toliver still fails to state claims to relief for the following reasons.

### B.   Individual Capacity Claim Against Nurse Hickey For Filing A False Disciplinary Report Against Toliver

Toliver alleges that Nurse Hickey "fil[ed] a false disciplinary report" against Toliver because Toliver had filed a grievance against Nurse Hickey. (ECF No. 1-1 at PageID 4.) The disciplinary charge against Toliver was later expunged. (*Id.* at PageID 5.) Toliver's allegation fails to state a claim to relief.

A prisoner does not have a due process right to be free of false disciplinary charges. *See Upshaw v. Jones*, No. 14-2534-JDT-TMP, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015) (citing *Person v. Campbell*, 182 F.3d 918, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) (unpublished)). Although a prisoner has a due-process right to call witnesses on his behalf

5

at a hearing, *Edwards v. Balisok*, 520 U.S. 641, 647 (1997), prisoners have no right to not to be charged with or convicted of prison disciplinary offenses. *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974).

For these reasons, Toliver does not state an individual capacity claim to relief against Nurse Hickey for "a frivolous disciplinary report" (ECF No. 1-1 at PageID 4). Such claim is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim to relief.

### C.   <u>Individual Capacity Claim Against Nurse Hickey For Retaliation</u>

Toliver alleges that Nurse Hickey filed a false disciplinary report against him in retaliation for Toliver's filing of a grievance against Nurse Hickey and Nurse Stanback. (ECF No. 1-1 at PageID 4.) Toliver alleges that Nurse Hickey's "frivolous disciplinary report" against him was "[d]ue to Toliver engaging in protected conduct by exhausting his administrative remedies." (*Id.*) The Court construes Toliver's allegations as a claim of retaliation.

The Court reviews Toliver's retaliation claim under the First Amendment. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution"). A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391. Filing a prison grievance also is protected conduct. *Hill*, 630 F.3d at 472. "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or

motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  "Temporal proximity can provide circumstantial evidence of retaliatory motive." *Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017) (citing Hill, 630 F.3d at 475-76); *see King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (noting that "temporal proximity between protected conduct and retaliatory acts" when close enough may "creat[e] an inference of retaliatory motive"); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (same).

Toliver's allegation that Nurse Hickey fabricated disciplinary charges against him do not allege a causal connection that is sufficient to support a claim of retaliation.  Even assuming that Toliver's protected free speech in filing a grievance against Nurse Hickey was a motivating factor in Nurse Hickey filing a disciplinary report against Toliver, Toliver failed to show that Nurse Hickey would not have filed such report against Toliver in the absence of Toliver's protected activity, as required to establish First Amendment retaliation claim.  *See Whitfield v. Thompson*, 165 F. Supp. 3d 1227, 1255 (S.D. Fla. 2016).  Because Toliver does not allege the dates on which (1) he filed a grievance against Nurse Hickey and (2) Nurse Hickey filed the disciplinary report against Toliver, the complaint alleges no facts about temporal proximity from which to plausibly infer that a causal connection existed between Toliver's protected activity and Nurse Hickey's allegedly adverse action.  In fact, the complaint can reasonably be construed as demonstrating that Toliver did not suffer adverse action because Nurse Hickey's disciplinary charge "later got expunged."  (ECF No. 1-1 at PageID 5.)  *See*, *e.g.*, *Horstkotte v. N.H. Dept. of Corrs.,* No. 08-cv-285, 2010 WL 1416790 at * 4 (D.N.H. Apr. 2, 2010) (inmate found not guilty of disciplinary charge did not suffer adverse action for purposes of § 1983 retaliation claim under the First Amendment). Toliver fails to allege facts demonstrating causal connection for an actionable retaliation claim.

Toliver's individual capacity retaliation claim against Nurse Hickey is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### D.   Individual Capacity Claims Against Nurse Hickey, Dr. Mardis, And Officer Thomas For Violation Of Equal Protection

Toliver alleges that Nurse Hickey "discriminat[ed] against Toliver by not treating Toliver equally regardless of race, sex or religion." (ECF No. 1-1 at PageID 4.) Toliver claims that Dr. Mardis violated Toliver's equal protection rights by "removing [him] from general population due to Toliver being tested for COVID-19." (*Id*. at PageID 8.) Toliver vaguely alleges that Officer Thomas violated Toliver's equal protection rights by "fail[ing] to equally treat Toliver as the same as [sic] any other prisoner." (*Id*. at PageID 9.) Toliver does not provide dates when the alleged violations occurred, and he does not describe Nurse Hickey's or Officer Thomas's alleged discriminatory conduct. (*See id*.)

The Court construes Toliver's allegations as a claim of violation of equal protection.

The Equal Protection Clause of the Fourteenth Amendment states that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause directs that all persons similarly situated should be treated alike, prohibiting discrimination by government which burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *EJS Properties, LLC v. City of Toledo*, 698, F.3d 845, 864 (6th Cir. 2012). "[T]o establish an equal protection violation, a plaintiff must establish more than differential treatment alone – a discriminatory intent or purpose is required." *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977)). To prevail under an equal protection challenge, a claimant "must allege that a state actor intentionally discriminated against the claimant because of membership in a protected

class." *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014). Such allegations must be supported by facts. Merely alleging that an individual's actions were based upon membership in a protected class and were "supported by animosity towards [the] plaintiff" who belongs to a different [class] does not suffice. *Nali v. Ekman*, 355 F. App'x 909, 912-13 (6th Cir. 2009). This is where Toliver's complaint falls short.

Toliver does not allege facts demonstrating that Nurse Hickey, Dr. Mardis, and Officer Thomas were motivated to treat Toliver differently during his confinement at the WTDF on the basis of Toliver's membership in a protected class. *See Nali*, 355 F. App'x at 913; *Deleon*, 739 F.3d at 918. Instead, Toliver offers only his unsupported, blanket accusations that, for example, Nurse Hickey "discriminat[ed] against Toliver by not treating Toliver equally regardless of color, race, sex, or religion" (ECF No. 1-1 at PageID 4) and Officer Thomas "failed to equally treat Toliver as the same as [sic] any other prisoner." (*Id*. at PageID 9.) The possibility that Toliver might have had COVID-19 when Dr. Mardis removed him from the WTDF's general inmate population does not qualify as membership in a protected class for purposes of equal protection analysis. *See*, *e.g.*, *Tigges v. Northam*, 473 F. Supp. 3d 559, 573 (E.D. Va. 2020) (plaintiff who challenged governor's orders that restricted in-person gatherings to slow the spread of COVID-19 was not a member of a protected class for purposes of equal protection); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (prisoners are not a protected class of individuals). Toliver does not allege facts demonstrating that he was treated differently than similarly situated detainees of a different protected class.

Toliver does not state individual capacity claims to relief against Nurse Hickey, Dr. Mardis, or Officer Thomas for deprivation of equal protection. Such claims are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim to relief.

### E.   Individual Capacity Claim Against Captain Trafon For Failure To Train

Toliver alleges that Captain Trafon "failed to adequately train an employee," who "violat[ed] Toliver's 14th Amendment [right] against discriminate[on]." (ECF No. 1-1 at PageID 6-7 (alleging that Captain Trafon failed to adequately train Nurse Hickey to treat Toliver in the same manner "as other detainees").

The Sixth Circuit has found that an attempt to hold an officer liable in his individual capacity for his "alleged failure to adequately train employees ... 'improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability.'" *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 563 (6th Cir. 2011) (citation omitted). Even assuming that Captain Trafon had some responsibility for developing or implementing training policies at the WTDF, which Toliver's complaint does not clearly allege, Captain Trafon cannot be held liable for money damages because there are no facts in the complaint showing that Captain Trafon was personally involved in the "employee['s]" alleged unconstitutional discrimination against Toliver. *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647–48 (6th Cir. 2012).

To the extent Toliver alleges that Captain Trafon "helped assist" Nurse Hickey's alleged retaliation against Toliver, Toliver offers no fact demonstrating that Captain Trafon directly participated or implicitly authorized, approved, or acquiesced in the supposed retaliation alleged in the complaint. (*See* ECF No. 1-1 at PageID 6-7.) Absent evidence of personal involvement in alleged underlying misconduct, a county official defendant cannot be individually liable based on his failure to train or supervise. *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 646–48 (6th Cir. 2012).

Toliver fails to allege sufficient facts stating an individual capacity claim to relief against Captain Trafon for failure to train. Such claim is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim to relief.

F.   **Individual Capacity Claims Against Nurse Hickey, Dr. Mardis, And Officer Thomas For Segregated Confinement**

Toliver alleges that he was placed in segregated confinement on unspecified dates for an unspecified length of time due to Nurse Hickey's alleged false disciplinary charge. (ECF No. 1-1 at PageID 5.) Toliver alleges also that Dr. Mardis recommended that Toliver be placed in medical isolation due to his COVID-19 symptoms, but Dr. Mardis instead housed Toliver in administrative segregation, where Toliver lost certain privileges. (*Id.* at PageID 8.) Toliver further alleges that Officer Thomas wrongfully placed Toliver in "solitary confinement for no apparent reason." (*Id.* at PageID 9.) Toliver's factual allegations fail to state a claim to relief.

A prisoner has no "inherent constitutional right to avoid … segregated housing." *Hill*, 630 F.3d at 469. Mere placement in administrative segregation itself does not implicate protectible liberty interests under the Due Process Clause. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). For segregation to be actionable, the Supreme Court has held that an inmate must show that his segregated confinement was "atypical and significant hardship in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). "[T]o implicate a cognizable liberty interest in the prison setting, ... the discipline must be unusual and substantial 'in relation to the ordinary incidents of prison life.'" *Harden-Bey v. Rutter*, 524 F.3d 789, 792 (6th Cir. 2008) (quoting *Sandin*, 515 U.S. at 484). The duration of an inmate's segregated confinement is relevant to, but not solely determinative of, whether his confinement imposes atypical and significant hardship on him. *See Harden-Bey*, 524 F.3d at 795.

Toliver does not identify the time period in which he was in "segregated confinement" (ECF No. 1-1 at PageID 5), "administrative segregation" (*id*. at PageID 8), or "solitary confinement" (*id*. at PageID 9) (collectively referred to as the "Alleged Segregation"). Even if the Court liberally construes the complaint to suggest that Toliver was in the Alleged Segregation

from October 1, 2020 through December 31, 2020[2], that three-month period is insufficient to demonstrate atypical and significant hardship.[3]   Toliver does not allege any facts describing the conditions of the Alleged Segregation, much less conditions that (1) differ "'in relation to the ordinary incidents of prison life'" or (2) differ from conditions experienced by other segregated inmates.  *See Sandin*, 515 U.S. at 484 & 487.  For example, Toliver does not allege whether he was confined to his segregated cell every day and, if so, for how long.  *See*, *e.g.*, *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003).  Although Toliver alleges that he was "unafforded certain privileges because of being around other detainees who [were] in segregation for disciplinary purposes" (ECF No. 1-1 at PageID 8), the law is well-settled in the Sixth Circuit that an inmate's temporary loss of privileges and restrictions on privileges do not rise to the level of constitutional magnitude.  *See Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (the plaintiff-inmate did not have a "liberty interest in freedom from ... penalties").  Toliver does not allege that he was actually harmed by conditions in the Alleged Segregation.

Toliver's claim of unconstitutional segregation is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim to relief because he does not allege sufficient facts demonstrating that the Alleged Segregation placed "atypical and significant hardship on him in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484.

---

[2]   The grievances that Toliver attaches to his complaint cover the period October 2020 through December 2020.  (*See* ECF No. 1-2 at PageID 12-35.)

[3]   *See*, *e.g.*, *Bradley v. Evans*, 229 F.3d 1150, 2000 WL 1277229, at *5-7 (6th Cir. Aug. 23, 2000) (unpublished) (fourteen months of segregation did not constitute atypical and significant hardship); *Albiola v. Pugh*,  No. 4:14-CV-1645, 2015 WL 1915289, at *6 (N.D. Ohio Apr. 27, 2015) (one hundred thirty-seven days of segregation did not constitute atypical and significant hardship).  *Cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (thirteen years in administrative segregation gave rise to a liberty interest).

12

To the extent Toliver asserts a claim of unconstitutional punishment due to the Alleged Segregation, he still fails to state a claim to relief.

For pretrial detainees, the Fourteenth Amendment's due process clause precludes "punish[ment] prior to an adjudication of guilt." *Thompson v. Cnty. of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994) (quoting *Bell v. Wolfish*, 441 U.S. 520 535 (1979)). "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment." *Bell*, 441 U.S. at 539 (internal citations omitted). A pretrial detainee can demonstrate that he was subjected to unconstitutional punishment by showing: (1) "an expressed intent to punish on the part of the detention facility officials," or (2) that "a restriction or condition is not rationally related to a legitimate government objective or is excessive in relation to that purpose." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 717 (6th Cir. 2020) (citing *Bell*, 441 U.S. at 535 and *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).

There are insufficient factual allegations in the complaint from which to plausibly infer that the alleged "segregated confinement" by Nurse Hickey, "administrative segregation" by Dr. Mardis, or "solitary confinement" by Officer Thomas: (1) were intended to punish Toliver; (2) were not rationally related to a legitimate government objective; or (3) were excessive in relation to that purpose. For example, the plausible inferences from the complaint are that (1) Toliver was placed in segregated confinement before Nurse Hickey's disciplinary charges were later expunged (*see* ECF No. 1-1 at PageID 5) and (2) Dr. Mardis's administrative segregation of COVID-symptomatic Toliver was for the safety of WTDF inmates and personnel (*see id.* at PageID 8). Even assuming the truth of Toliver's assertion that his "solitary confinement" by Officer Thomas lacked a "disciplinary report or documentation", that lone contention fails to demonstrate the confinement was not rationally related to a legitimate government objective or was excessive. (*See id.* at PageID 9.)

13

For all of these reasons, Toliver fails to state individual capacity claims to relief against Nurse Hickey, Dr. Mardis, and Officer Thomas for unconstitutional segregation. Such claims are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim to relief.

> ### G.   Individual Capacity Claims Against Nurse Hickey And Dr. Mardis For Unconstitutional Conditions Of Confinement

Toliver claims that Nurse Hickey violated Toliver's Eighth Amendment rights, but his allegations are difficult to construe. (ECF No. 1-1 at PageID 5.) Toliver alleges that Nurse Hickey gave Toliver a "pill" (the "Pill") that worsened Toliver's COVID-19 symptoms of headache, nausea, and stomach ache. (*Id.* (the "Pill Claim")) Toliver does not identify the medication that Nurse Hickey provided, and Toliver does not allege ongoing injury from the Pill. (*Id.*) Toliver further alleges that Dr. Mardis ignored Toliver's request for outside medical care for his COVID-19 symptoms. (*Id.* at PageID 7 (the "Outside Care Claim").) Toliver also alleges that, while he waited for the results of his COVID-19 test, Dr. Mardis housed Toliver in an isolated cell that lacked hot water, a mirror, and a bunk bed. (*Id.* (the "Cell Condition Claim").)

Toliver's Pill Claim, Outside Care Claim, and Cell Condition Claim are construed as Eighth Amendment claims of unconstitutional conditions of confinement. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). Under the Eighth Amendment, prison officials must provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Extreme deprivations are required to make out a conditions of confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, ... only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotations and citations omitted). "[T]here must exist a specific condition on which to base the [E]ighth [A]mendment claim. [S]uch conditions, 'considered alone or in

14

combination [with other conditions],' must amount to a deprivation of 'life's necessities,' before a violation of the [E]ighth [A]mendment can be found." *Walker v. Mintzes*, 771 F.2d 920, 925 (6th Cir. 1985) (quoting *Rhodes*, 452 U.S. at 347). A plaintiff also must demonstrate a "culpable state of mind" on the part of prison officials. *Wilson*, 501 U.S. at 297, 303. "Eighth Amendment claims based on prison conditions have both an objective component (denial of … 'the minimal civilized measure of life's necessities'), and a subjective component ('deliberate indifference')." *Berryman v. Johnson*, No. 88-1239 & 88-1280, 1991 WL 150808, at *9-10 (6th Cir. Aug. 6, 1991) (internal citations omitted); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 928. A prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 347).

The subjective component requires that jail officials acted with requisite intent -- *i.e.*, had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. A plaintiff must show that prison officials acted with "deliberate indifference" to a substantial risk that he would suffer serious harm. *Wilson*, 501 U.S. at 302-03. A prison official must subjectively know of an excessive risk of harm to an inmate's health or safety and disregard that risk. *Farmer*, 511 U.S. at 837.

1. **The Pill Claim And Outside Care Claim**

The Court accepts as true for purposes of PLRA screening that COVID-19 and the risks attendant on contracting it are sufficiently serious for purposes of the Eighth Amendment's objective prong. However, Toliver fails to allege sufficient facts demonstrating the Eighth Amendment's subjective prong.

As to the Pill Claim, Toliver does not allege facts showing that Nurse Hickey knew of and disregarded an excessive risk to Toliver's health or safety when Nurse Hickey gave him the Pill. Toliver's vague allegation that Nurse Hickey "illegally g[a]v[e]" the Pill to Toliver does not afford plausible inference that Nurse Hickey possessed a sufficiently culpable state of mind for purposes of an Eighth Amendment claim. For example, Toliver does not allege the health symptoms for which Toliver took the Pill or why the Pill was contraindicated for such symptoms. Toliver does not claim that Nurse Hickey forced him to take the Pill. (*See* ECF No. 1-1 at PageID 5.)

As to the Outside Care Claim, Toliver does not allege facts showing that Dr. Mardis knew of and disregarded an excessive risk to Toliver's health or safety when Dr. Mardis allegedly refused to send Toliver to an outside medical facility for COVID-19 symptoms. For example, Toliver does not describe: the alleged COVID-19 symptoms for which he wanted outside medical care; the dates he asked Dr. Mardis to be sent to an outside medical facility; the reasons he gave to Dr. Mardis for wanting outside care; or the reasons Dr. Mardis gave for denying the request. (*See id*. at PageID 7.) Toliver's lone assertion that "Dr. Mardis [was] deliberately indifferent [to] Toliver's serious medical condition" (*id*.) alleges no facts that support Toliver's conclusory speculation. Conclusory allegations such as these "are not entitled to the assumption of truth." *See Ashcroft*, 556 U.S. at 679; *Twombly*, 550 U.S. at 555-57 n.3; and Fed. R. Civ. P. 8(a)(2). There are simply no factual allegations in the complaint from which to plausibly infer that Dr. Mardis had a sufficiently culpable state of mind.

### 2.  The Cell Condition Claim

Lack of hot water, a mirror, and a bunk bed do not amount to the denial of the minimal civilized measure of life's necessities. *See Hemingway v. Castillo*, No. 12-2390, 2013 WL 1314424, at *4 (W.D. Tenn. Mar. 28, 2013) (internal citations omitted).

16

To the extent that Toliver bases the Cell Claim on water temperature, plumbing problems in jails, such as cold water, are neither unexpected nor *per se* unconstitutional.  Rather, the circumstances, nature, and duration of the alleged deprivation must be considered.  *See Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006) (citation omitted).  Toliver does not allege the length of time during which he lacked hot water in the isolation cell, and he does not claim that he suffered injury because of the lack of hot water.

"[D]eprivation of a bunk [bed] was a temporary inconvenience," and Toliver has not "show[n] that this condition fell beneath minimal civilized measure of life's necessities."  *See Dellis v. Correc. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001).  "In addition," even assuming "the bunk's placement on the floor", that bed condition "and the absence of a mirror in the cell amount at most to minor inconveniences."  *See E-Amin v. Correct Care Solutions*, No. 3:12-cv-416, 2012 WL 1640791, at *1 (M.D. Tenn. May 9, 2012).  Toliver's Cell Condition Claim does "not allege[] facts suggesting he was deprived of any 'identifiable necessity of civilized human existence.'"  *Id*. (internal citation omitted).  Toliver does not allege facts that demonstrate the Eighth Amendment's objective prong for the Cell Condition Claim.

As to the Eighth Amendment's subjective prong, Toliver does not allege that Dr. Mardis caused the lack of hot water, bunk bed, or mirror in the isolation cell.  Toliver does not claim that alternative cells were available at the WTDF during the relevant time for Toliver to isolate for his and others' safety while he had COVID-19 symptoms.  There are insufficient factual allegations in the complaint from which to plausibly infer Dr. Mardis's sufficiently culpable state of mind for the Cell Condition Care Claim.

For all of these reasons, Toliver fails to state individual capacity claims to relief against Nurse Hickey and Dr. Mardis for unconstitutional conditions of confinement in violation of the Eighth Amendment.  Such claims are **DISMISSED WITHOUT PREJUDICE**.

17

**H.**   **Individual Capacity Claims Against Dr. Mardis and Officer Thomas For Improper Housing Classification**

Toliver alleges that Dr. Mardis "indifferently hous[ed] him inside medical[ly] isolate[ed] confinement while awaiting his COVID-19 test results." (ECF No. 1-1 at PageID 7.) When Dr. Mardis sought a medically isolated cell for Toliver a second time to prevent spread of his COVID-19 symptoms, Toliver alleges that conduct was "cruel and unusual." (*Id.* at PageID 8.) Toliver alleges that he lost certain privileges in segregation, but he does not claim that he suffered any injury from segregated housing. (*See id.*) Toliver also alleges that Officer Thomas wrongfully confined him in "solitary confinement for no apparent reason." (*Id.* at PageID 9.)

The Court construes Toliver's allegations as a claim of improper housing classification.

Toliver's cell assignments and housing classifications do not rise to the level of a constitutional violation. An inmate does not have a constitutionally protected right to be assigned to a particular prison, security classification, or housing assignment. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Williams v. Bezy*, 97 F. App'x 573, 574 (6th Cir. 2004). This Court does not have the authority to supervise classification and assignment of inmates. *See Meachum v. Fano*, 427 U.S. 215 (1976).

For these reasons, Toliver does not state a claim of constitutional deprivation based on his cell assignments during the times alleged in the complaint. Such claim is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim to relief.

**I.**   **Individual Capacity Claims Against Case Manager Anderson For Inadequate Prison Grievance Process And Against Captain Trafon For Failure To Investigate**

Toliver alleges that Case Manager Anderson hindered Toliver from exhausting his administrative remedies. (ECF No. 1-1 at PageID 11.) Toliver's vague allegations seem to suggest that Anderson submitted Toliver's grievances in an untimely manner. (*Id.*) Toliver also alleges that Captain Trafon failed to investigate disciplinary charges against Toliver. (*Id.* at

PageID 6.)   Toliver alleges that Captain Trafon: (1) failed to investigate the veracity of Nurse

Hickey's disciplinary charges against Toliver; (2) "approv[ed] the disciplinary report"; and (3)

thus indirectly "helped assist in [Hickey's] retaliation [against Toliver]."  (*Id.* at PageID 7.)  The

law governing Toliver's grievance-related claim against Anderson and investigation-related claim

against Captain Trafon overlaps.  Those claims are considered together.

"[T]here is no constitutionally protected due process right to unfettered access to prison

grievance procedures."  *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005).

Prisoners do not possess a constitutional right to a prison grievance procedure.  *See Young v.*

*Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002).  Even if a grievance system were constitutionally

guaranteed, Toliver does not allege that Anderson impeded Toliver's "ability to bring his claim

before any court."  *See Coleman v. Governor of Michigan*, No. 09-1139, 413 F. App'x 866, 874-

875 (6th Cir. 2011) (citation omitted).

Prisoners have a First Amendment right to file a grievance against prison officials, but they

have no similar right to an investigation of their allegations.  *See Carlton v. Jondreau*, 76 F. App'x

642, 644 (6th Cir. 2003) (inmate did not state a claim that deputy warden "had failed to properly

investigate his grievance").  "There is no statutory or common law right, much less a constitutional

right, to an investigation."  *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citing *Linda*

*R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

Toliver's claim against Anderson for inadequate grievance process and claim against

Captain Trafon for failure to investigate fail to state claims to relief and are **DISMISSED**

**WITHOUT PREJUDICE**.

## IV.    AMENDMENT UNDER THE PLRA

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint

to avoid a *sua sponte* dismissal under the PLRA.  *LaFountain v. Harry*, 716 F.3d 944, 951 (6th

Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Courts are not required to grant leave to amend where an amendment cannot cure the deficiency. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001). The Court **GRANTS** Toliver one opportunity to amend the complaint, under the guidelines set forth below.

## V.   <u>CONCLUSION</u>

For all of the reasons explained above:

A.   The Court **DISMISSES THE COMPLAINT (ECF No. 1) WITHOUT PREJUDICE** for failure to state a claim on which relief can be granted, under 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1);

B.   Leave to amend the complaint is **GRANTED**. Any amendment to Plaintiff's claims must be filed within twenty-one (21) days after the date of this Order. Plaintiff is advised that an amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleadings. The amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count. If Plaintiff fails to file an amended complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment. *See Simons v. Washington*, 996 F.3d 350 (6th Cir. 2021); and

C.   Toliver is **ORDERED** to notify the Court in writing, within twenty-one (21) days of the date of entry of this Order, of Toliver's present address. (*See* ECF No. 6; *cf.*

https://foil.app.tn.gov/foil/details.jsp.)  If Toliver fails to abide by this or any other provisions of this Order, the Court may impose appropriate sanctions, up to and including dismissal of this action, without any additional notice or hearing by the Court.

     **SO ORDERED**, this 29th day of December, 2022.

            *s/ John T. Fowlkes*
            JOHN T. FOWLKES
            UNITED STATES DISTRICT JUDGE